IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DRAGON INTELLECTUAL PROPERTY, LLC,   )
                                     )
              Plaintiff,             )
                                     )
      v.                             )
                                     )   C.A. No. 13-2061 (RGA)
AT&T SERVICES, INC.,                 )
                                     )
              Defendant.             )

**<u>OPENING BRIEF IN SUPPORT OF AT&T'S MOTION FOR RULE 11 SANCTIONS</u>**


OF COUNSEL:

Bryant C. Boren, Jr.
BAKER BOTTS L.L.P.
1001 Page Mill Road
Building One, Suite 200
Palo Alto, CA 94304
(650) 739-7500

Roger Fulghum
Lisa C. Kelly
Thomas Rooney
Michelle J. Eber
BAKER BOTTS L.L.P.
One Shell Plaza
910 Louisiana
Houston, TX 77002
(713) 229-1234


December 14, 2015

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
Ethan H. Townsend (#5813)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
rsmith@mnat.com
etownsend@mnat.com

*Attorneys for Defendant AT&T Services, Inc.*

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................................... 1

II.    NATURE AND STAGE OF THE PROCEEDINGS .......................................... 2

III.    LEGAL STANDARDS ........................................................................................... 2

     A.    The Third Circuit Applies an "Objective Reasonableness" Test to Determine Whether Pleadings are Baseless and Frivolous .................................... 2

     B.    Rule 11 Allows for Dismissal of Frivolous Claims and Monetary Sanctions .............................................................................................................. 3

IV.    STATEMENT OF FACTS ..................................................................................... 4

     A.    The Applicants of the '444 Patent Disclaimed Continuous Recording ................ 4

     B.    Each of Defendants' Accused Products Is A Continuously Recording Device ..................................................................................................................... 5

     C.    Dragon's Initial Infringement Contentions Present Untenable Theories in an Attempt to Evade the Prosecution History ........................................................ 5

     D.    Dragon Submitted Indefensible Infringement Theories in its Amended Infringement Contentions .................................................................................... 6

     E.    Dragon Was Aware That AT&T's Devices Continuously Record, Yet It Pursued its Infringement Theories Anyways ......................................................... 8

     F.    Defendants Highlighted the Problem with Dragon's Claim Construction Positions, and the Court Agreed ............................................................................ 8

     G.    Even After the *Markman* Ruling, Dragon Refuses To Dismiss With Prejudice .............................................................................................................. 10

V.    ARGUMENT ......................................................................................................... 10

VI.    CONCLUSION ...................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ario v. Underwriting Members of Syndicate 53 at Lloyds*,
  618 F.3d 227 (3d Cir. 2010) ....................................................................2

*Doering v. Union Cnty. Bd. of Chosen Freeholders*,
  857 F.2d 191 (3d Cir. 1988) ....................................................................3

*Lease v. Fishel*,
  712 F. Supp. 2d 359 (M.D. Pa. 2010) ....................................................4

*Lieb v. Topstone Indus., Inc.*,
  788 F.2d 151 (3d Cir. 1986) ....................................................................4

*Marina Mgmt. Servs., Inc. v. Vessel My Girls*,
  202 F.3d 315 (D.C. Cir. 2000) ................................................................4

*Simmerman v. Corino*,
  27 F.3d 58 (3d Cir. 1994) ........................................................................3

*Vehicle Operation Techs. LLC v. Am. Honda Motor Co. Inc.*,
  67 F. Supp. 3d 637, 650 (D. Del. 2014) ....................................... 1, 10, 11

*View Eng'g, Inc. v. Robotic Vision Sys., Inc.*,
  208 F.3d 981 (Fed. Cir. 2000) ............................................................3, 4

**Rules and Statutes**

Fed. R. Civ. P. 11 ....................................................................*passim*

ii

## I.   INTRODUCTION

During the prosecution of the single patent at issue in these cases, U.S. Patent No. 5,940,444 ("the '444 Patent"), the applicants "clearly and unequivocally disclaimed continuous recording devices."   D.I. 110 at 7.   Dragon should have known at the outset of its case that continuous recording devices like AT&T's accused devices were not covered by the '444 Patent, as "any reasonable pre-suit investigation should have included a review of the prosecution history."   *See Vehicle Operation Techs. LLC v. Am. Honda Motor Co. Inc.*, 67 F. Supp. 3d 637, 650 (D. Del. 2014) (granting Defendants' motion for Rule 11 sanctions).   This Court has "only once seen a clearer case of prosecution disclaimer."   D.I. 110 at 7 (citing *Vehicle Operation*). Yet Dragon refused to acknowledge those disclaimers.   It chose instead to pursue and maintain litigation for nearly two years using unsound claim interpretations in an attempt to capture the very continuous recording devices that the patent applicants clearly stated were not covered by the claims of the '444 Patent.

AT&T repeatedly notified Dragon that its accused devices were non-infringing continuous recorders throughout the litigation.   Yet Dragon insisted on pursuing claim constructions and infringement theories tailored to avoid the prosecution history, forcing AT&T to defend a meritless and baseless case.   For example, one position Dragon pursued was that a claim term that appeared twice in the claim ("broadcast program information") had two different meanings, in violation of basic claim construction principles.

Each action that Dragon has taken in pursuing infringement theories of continuous recording devices in this case — including filing its complaint, serving infringement contentions, and pursuing unsupported claim construction positions — is a violation of Federal Rule of Civil Procedure 11.   Therefore, Defendant AT&T Services, Inc. ("AT&T") respectfully requests the

Court dismiss Dragon's patent infringement claims with prejudice and grant any other sanctions it deems appropriate under Rule 11 of the Federal Rules of Civil Procedure.

## II.     NATURE AND STAGE OF THE PROCEEDINGS

This suit has been pending for nearly two years.  The Court held a *Markman* hearing on May 22, 2015 and issued its claim construction opinion on September 9, 2015.  The Court entered constructions in Defendants' favor and found that "Plaintiff cannot now use claim construction to recapture continuous recording devices."  D.I. 110 at 7.  Dragon admitted that "a finding of infringement is not possible" under the Court's claim construction.  D.I. 113 at 5.

Most recently, counsel for Dragon has withdrawn from this case.  D.I. 118.  The Court ordered Dragon to retain successor counsel by December 14, 2015.  *Id.*  The Court ordered that "failure to secure counsel within thirty days [i.e., by December 14, 2015] shall result in the dismissal with prejudice of this action."  *Id.*  To date, new counsel have not appeared for Dragon. The Devlin Law Firm, LLC has filed a motion for provisional entry of appearance only if the Court orders that it "would not be subject to liability for any fees, costs, or other sanctions based on activity taking place prior to its entry of appearance."  D.I. 121.

## III.    LEGAL STANDARDS

### A.     The Third Circuit Applies an "Objective Reasonableness" Test to Determine Whether Pleadings are Baseless and Frivolous

Rule 11 sanctions are warranted if an attorney "fail[s] to make a reasonable inquiry into the legal legitimacy of a pleading."  *Ario v. Underwriting Members of Syndicate 53 at Lloyds*, 618 F.3d 227, 297 (3d Cir. 2010).  By presenting a signed paper to the court, an attorney certifies that he has performed "an inquiry reasonable under the circumstances" and certifies that:

> (2) the claims, defenses, and other legal contentions are warranted
> by existing law or by a nonfrivolous argument for extending,

> modifying, or reversing existing law or for establishing new law;
> [and]
> (3) the factual contentions have evidentiary support or, if
> specifically so identified, will likely have evidentiary support after
> a reasonable opportunity for further investigation or discovery. . .

Fed. R. Civ. P. 11(b).  Additionally, the advisory committee notes state: "[Rule 11(b)] does not require a formal amendment to pleadings for which evidentiary support is not obtained, but rather calls upon a litigant not thereafter to advocate such claims or defenses."  Notes to 1993 Amendment of Fed. R. Civ. P. 11.

In determining whether attorney conduct violates Rule 11, courts ask whether the conduct was "objectively reasonable under the circumstances." *Simmerman v. Corino*, 27 F.3d 58, 62 (3d Cir. 1994).  In the patent context, Rule 11 "must be interpreted to require the law firm to, at a bare minimum, apply the claims of each and every patent that is being brought into the lawsuit to an accused device and conclude that there is a reasonable basis for a finding of infringement." *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000).  Importantly, the attorney's prefiling interpretation of the claims must be nonfrivolous, and "any reasonable pre-suit investigation should [] include[] a review of the prosecution history." *Vehicle Operations*, 67 F. Supp. 3d at 650 (granting Defendants' motion for Rule 11 sanctions).

### B.      Rule 11 Allows for Dismissal of Frivolous Claims and Monetary Sanctions

Dismissal is an available sanction under Rule 11.  *See* Fed. R. Civ. P. 11(c)(4) (addressing the nature of allowable sanctions);[1] *see also Doering v. Union Cnty. Bd. of Chosen Freeholders,* 857 F.2d 191, 194 (3d Cir. 1988) ("Other sanctions that could be appropriate . . .

---

[1]      Fed. R. Civ. P. 11(c)(4) states: "Nature of a Sanction. A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction *may include nonmonetary directives*; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, *an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses* directly resulting from the violation." (emphasis added).

include . . . dismissal of baseless claims or defenses"); *Lease v. Fishel*, 712 F. Supp. 2d 359, 368 (M.D. Pa. 2010) ("The court can impose . . . non-monetary sanctions, which can include: . . . dismissal of baseless claims."). Dismissal is an appropriate sanction when lesser sanctions would be ineffective, such as when the entire case is frivolous. *See Marina Mgmt. Servs., Inc. v. Vessel My Girls*, 202 F.3d 315, 325 (D.C. Cir. 2000) (internal citations omitted).

Rule 11 also contemplates that monetary sanctions against an attorney, law firm, or party are appropriate in a frivolous suit. Fed. R. Civ. P. 11(c)(1) and (c)(4); *see also View Eng'g, Inc.*, 208 F.3d at 986 ("A patent suit can be an expensive proposition. Defending against baseless claims of infringement subjects the alleged infringer to undue costs – precisely the scenario Rule 11 contemplates."). Once a violation of Rule 11 has been found, the award of attorneys' fees is within the discretion of the Court. *Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 155-56 (3d Cir. 1986). With that in mind, "a court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1).

## IV. STATEMENT OF FACTS

### A. The Applicants of the '444 Patent Disclaimed Continuous Recording

Throughout prosecution of the '444 Patent, the applicants disclaimed continuous recording. The USPTO rejected the application six times based on a prior art patent referred to as Sata (U.S. Patent No. 5,134,499), which describes a system for continuous video recording. D.I. 78 at DIP9135 ('499 patent at 6:47-49). The applicants repeatedly distinguished Sata on the basis that Sata records continuously, and the claimed device in the application for the '444 Patent does not begin recording until the user actuates the record key. D.I. 62 at 9; D.I. 62-1 at 4-7, 17-21; D.I. 62-2 at 1-2, 17-20; D.I. 62-3 at 11-16; D.I. 62-4 at 1-2, 13-14; D.I. 110 at 7.

To overcome Sata, the applicants amended the claims to specify that recording must begin upon actuation of the record key and that playback must start from the beginning of the

recording.  D.I. 62-3 at 9-11.  Thus, the claimed invention of the '444 Patent is limited to a system with a record key to start a recording and a playback key to start playback from the beginning of that recording.  In other words, because of applicant's prosecution statements, the '444 Patent does not cover an apparatus that continuously records.

**B.    Each of Defendants' Accused Products Is A Continuously Recording Device**

Each of AT&T's accused products is a continuous recording device — a fact that is easily ascertainable by simply operating any one of AT&T's accused devices.  When a user of such products tunes to a channel, a pause buffer automatically starts recording, without any additional action by the user.  *See* Exhibit 1 (ATT-DRAG_00273820).  The information recorded in the pause buffer is represented by a blue bar at the bottom of the screen when a user is watching live TV.  The device plays content back to the user from the pause buffer after a user pauses or rewinds live TV.  The set top boxes do not create a new recording when the pause key is pressed; rather, pause merely stops the playback of information.  *See, e.g.*, Exhibit 2 (AT&T's Response to Dragon's Interrogatory No. 1).  Dragon would have discovered that AT&T's devices continuously record (in line with the industry standard) by simply operating any of AT&T's accused devices prior to filing its complaint.

**C.    Dragon's Initial Infringement Contentions Present Untenable Theories in an Attempt to Evade the Prosecution History**

Dragon crafted and pursued indefensible infringement theories to try to circumvent the clear prosecution history disclaimer of the '444 Patent.  For example, in its initial infringement contentions, Dragon asserted that a "new recording" begins when the user actuates the pause button on the accused devices.  *See* Exhibit 3 (Dragon's Initial Infringement Contentions for AT&T) at 18 ("In particular, when a user watching TV actuates the pause button (i.e., the record key), a new recording of the live TV program then being watched begins by initiating storage of

the TV program in the memory unit.").  By re-defining what "a recording" is and when a "new recording" begins, Dragon contended that AT&T's devices satisfied the claim element "the record key is first actuated to begin a recording by initiating storage of the broadcast program information in said memory unit."  '444 Patent, claim 1.  This infringement theory, while convenient for Dragon's case, was not supported by any evidence.  Worse, it was in direct contradiction with any pre-suit investigation by Dragon and a common-sense operation of any of the accused products.

### D.   Dragon Submitted Indefensible Infringement Theories in its Amended Infringement Contentions

Two months later, Dragon provided "further" infringement contentions in which it again set forth indefensible claim construction positions to avoid the clear prosecution history disclaimer of the '444 Patent.  For example, Dragon attempted to redefine the claim term "broadcast program information" in violation of basic claim construction principles.  According to Dragon, information recorded after the user pressed pause and before the user pressed play was "the broadcast program information *of interest*," while the other recorded information was "program information other than *'the'* broadcast program information:



Fig. 1



Fig. 2

Exhibit 4 (Dragon's Further Initial Infringement Contentions on AT&T) at 14-15 (emphasis added).   Dragon tried to limit "broadcast program information" to only a certain slice of information in an attempt to capture continuous recording devices.   But again, Dragon lacked evidence to support its theory, which flew in the face of basic claim construction tenets.

Dragon continued to pursue this theory throughout claim construction.   For example, in violation of Federal Circuit precedent, Dragon contended that the word "the" changed the meaning of the claim term "broadcast program information" that appears twice in asserted claim 1.   According to Dragon, the claim term "broadcast program information" needed no construction, but the claim term "*the* broadcast program information" meant "the broadcast program information presented after the record key is actuated and before the playback key is actuated."   D.I. 77 at 17, 62.   Similarly, Dragon's proposed construction of "to begin a recording by initiating storage of the broadcast program information in said memory unit" attempted to read out the requirement of "to begin a recording."   D.I. 77 at 71-83.   In pursuing these constructions, Dragon simply ignored the disclaimers made during prosecution.

7

**E.**     **Dragon Was Aware That AT&T's Devices Continuously Record, Yet It Pursued its Infringement Theories Anyways**

At nearly every juncture in the case, AT&T notified Dragon that the accused devices were continuous recording devices that could not infringe the claims of the '444 Patent because of the prosecution history disclaimer.  For example:

- In November 2014, Defendants requested that Dragon provide appropriate evidence to support its claims of infringement, or, alternatively, early adjudication of the case. Exhibit 5 (November 21, 2014 Hearing Tr.) at 16-17 ("what we're asking Your Honor to do is to order them to actually provide some evidence that hitting the pause key causes a recording to begin or to initialize. . . . If they can't do it they should drop this case.").

- In December 2014, AT&T notified Dragon that its accused devices do not infringe at least because "the accused devices automatically and continuously record program information by storing it in memory after a channel is selected."  Exhibit 2 (AT&T's Response to Dragon's Interrogatory No. 1).

- In February 2015, Defendants explained in briefing that Dragon's claim construction positions were incorrect because "[Dragon] interprets the claims to cover continuously recording systems — the precise type of system the applicants repeatedly disclaimed during prosecution."  D.I. 77 at 4-5.

- In April 2015, in connection with a hearing on Defendants' Motion to Stay, Defendants again explained that they were baffled by Dragon's infringement positions because of the prosecution history disclaimer.  Exhibit 6 (April 10, 2015 Hearing Tr.) at 20:2-21:11 ("it seemed like the kind of case that really ought to go away, and really should be withdrawn once, in our view, once the plaintiff understood that our devices were continuous recording devices. . . And their reaction was to come up with really a very, let's say aggressive claim construction strategy that would really try to recapture a continuous recording.")

At each of these stages, Dragon insisted on pursuing its infringement theories and claim construction positions, resisting early adjudication and a stay.  In doing so, Dragon prolonged this case, causing AT&T to incur costs for much longer than was necessary.

**F.**     **Defendants Highlighted the Problem with Dragon's Claim Construction Positions, and the Court Agreed**

Defendants highlighted the problem with Dragon's infringement theory in their *Markman* briefing and before the Court at the *Markman* hearing.  Defendants' briefing stated in its opening

pages: "Dragon has made clear in its proposed claim constructions and its infringement allegations that it interprets the claims to cover continuously recording systems—the precise type of system the applicants repeatedly disclaimed during prosecution."   D.I. 77 (Joint Claim Construction Brief) at 4-5.   Defendants explained at the hearing: "our products are continuous recording, and Dragon's entire strategy at this *Markman* hearing today is going to be to try to recapture continuous recording that was clearly disclaimed during the prosecution that led to the issuance of this patent."   *Markman* Tr. at 35:14-20; *see also id.* at 34:5-8.

The Court agreed, finally putting an end to Dragon's untenable infringement positions. In its *Markman* Opinion, this Court held that continuous recording devices were "clearly and unequivocally disclaimed" during the prosecution history, and that Dragon's constructions with respect to "broadcast program information," "record key," and "to begin a recording by initiating storage of the broadcast program information in said memory unit" were improper attempts to reclaim claim scope.   *See* D.I. 110 at 6-7.   Specifically, the Court found:

> In this case, the applicants ***clearly and unequivocally disclaimed continuous recording devices.   I have only once seen a clearer case of prosecution disclaimer.***[]   The Patent and Trademark Office rejected the patent six times based on U.S. Patent No. 5,134,499 ("Sata"). (D.I. 94 at 27). Sata teaches a recording device that "continuously records the video data concerning the television program of the channel tuned by the television tuner 1." ('499 patent, col. 6, 11. 47-49). The applicants ***repeatedly distinguished Sata on the basis that Sata records continuously***, and the claimed device does not begin recording until the user actuates the record key. (D.I. 78 at pp. 7-8, 52-54, 58, 77). . . . ***Plaintiff cannot now use claim construction to recapture continuous recording devices.***

*Id.* (emphases added).   Dragon's only infringement theory was eliminated from the case, and Dragon asked AT&T to stipulate to non-infringement so it could appeal the Court's claim construction.   Exhibit 7 (Sept. 11, 2015 Angell e-mail to Fulghum).

### G.      Even After the *Markman* Ruling, Dragon Refuses To Dismiss With Prejudice

Following the Court's claim construction ruling, AT&T has repeatedly requested that Dragon dismiss its case with prejudice, but Dragon has refused to do so.  *See* Exhibit 8 (Sept. 10, 2015 Letter from R. Fulghum to J. Angell); Exhibit 9 (October 26, 2015 Letter from R. Fulghum to R. Freitas).  Dragon admitted that "a finding of infringement is not possible" under the Court's claim construction, and Dragon's attorneys have withdrawn from the case.  D.I. 113 at 5; D.I. 118.

## V.      ARGUMENT

Dragon should have known at the outset of its case that continuous recording devices like AT&T's were not covered by the '444 Patent, as "any reasonable pre-suit investigation should have included a review of the prosecution history."  *See Vehicle Operation Techs. v. Am. Honda Motor Co.*, 67 F. Supp. 3d 637, 650 (D. Del. 2014) (granting Defendants' motion for Rule 11 sanctions).  Dragon could not have objectively believed, based on the prosecution history of the '444 patent, that each claim limitation covers any of the accused products.

When these issues were presented to the Court for claim construction, the Court held "the applicants ***clearly and unequivocally*** disclaimed continuous recording devices," and noted that it had only ***once*** a clearer case of prosecution disclaimer.  D.I. 110 at 7 (citing *Vehicle Operations*, 67 F. Supp. 3d 637 (D. Del. 2014)) (emphases added).  In such a clear case of prosecution history disclaimer, any attorney conducting a reasonable pre-suit investigation should have come to the same conclusion.

At least by November 2014, Dragon was well aware that AT&T's accused devices were continuous recording devices and should have dismissed its claims.  *See* Section IV.E.  Dragon nonetheless pursued and maintained litigation against AT&T's continuous recording devices by carefully crafting claim construction and infringement positions that avoided the prosecution

10

history disclaimer issue — lest it lose the case. *See* Section IV.D (detailing Dragon's position regarding "broadcast program information" and "when said record key is first actuated to begin a recording by initiating storage of the broadcast program information in said memory unit"). That constitutes a violation of Rule 11. *See* Rule 11 Advisory Committee Note ("[Rule 11(b)] does not require a formal amendment to pleadings for which evidentiary support is not obtained, but rather calls upon a litigant ***not thereafter to advocate such claims or defenses***." (emphasis added)).

The plaintiff's egregious behavior in the *Vehicle Operation Technologies* case — the only clearer instance of prosecution disclaimer seen by this Court — nearly mirrors the behavior of Dragon here. 67 F. Supp. 3d 637 (D. Del. 2014). In that case, the plaintiff failed to acknowledge several clear and unambiguous statements regarding the disclaimer of claim scope, which the Court held that any attorney performing a reasonable pre-filing investigation would have found. *Id.* at 650. The Court found that the "inventor repeatedly and unambiguously disclaimed the plain reading of the term 'display' and specifically disclaimed any type of display other than a 'dedicated display.'" *Id.* at 641-42. Yet, in spite of the disclaimer, the plaintiff filed claims of patent infringement against several defendants, in each case accusing products which did not include a "dedicated display." *Id.* at 642. The Court found that by ignoring the clear prosecution disclaimer and by continuing to claim infringement of non-dedicated displays, "the present action is without any merit and violates Rule 11(b)[]." *Id.* at 652. The Court dismissed the case. A similar sanction is warranted against Dragon.[2]

---

[2]      Dismissal is not a particularly harsh sanction in this case, where Dragon has already admitted that "a finding of infringement is not possible." D.I. 113 at 5. However, given that Dragon's infringement and claim construction positions in this case were baseless and unsupported by any evidence, AT&T should not be forced to expend further resources defending an appeal of those positions.

Dragon's litigation behavior is exactly what Rule 11 seeks to discourage. Because Dragon pursued and maintained litigation for which it lacked any objectively reasonable infringement theory, Dragon's complaint and infringement contentions against AT&T are "frivolous, legally unreasonable, or without factual foundation" and, thus, a violation of Rule 11. Not only did Dragon file a baseless complaint accusing AT&T's continuous recording devices of infringement, it recklessly maintained its case for nearly two years despite repeated notifications that the accused devices continuously record. *See supra* at Section IV.E. Just like the plaintiff in *Vehicle Operations*, Dragon unnecessarily prolonged this case when it should have known its infringement claims against AT&T's devices were unsupportable. *See id.* at 655. Sanctions, including dismissal with prejudice (and any other sanctions the Court deems appropriate under Rule 11), are warranted to deter Dragon and its counsel from pursuing such behavior in the future.[3]

## VI.    CONCLUSION

The applicants of the '444 patent expressly and repeatedly disclaimed continuous recording devices during prosecution, yet Dragon pursued infringement claims against AT&T's continuous recording devices. No objectively reasonable pre-suit investigation of the allegations in these cases could have established a tenable case of patent infringement. Thus, Dragon violated Rule 11 by pursuing and maintaining these cases. AT&T respectfully requests that this

---

[3]    Dragon's previous counsel—the only counsel who crafted and pursued the frivolous litigation positions against AT&T—have withdrawn from this case. D.I. 118. But withdrawal does not cure counsel's violations of Rule 11, as Dragon has failed to withdraw its complaint and allegations of infringement. Dragon and its previous counsel should never have filed those pleadings in the first instance. Counsel must be held responsible for its previous behavior, and this Court should not condone any attempt by Dragon's previous counsel to escape those actions.

Court utilize its authority under Rule 11 to dismiss this case with prejudice and award any other remedies and sanctions the Court deems appropriate.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

OF COUNSEL:

*/s/ Ethan H. Townsend*

Bryant C. Boren, Jr.
BAKER BOTTS L.L.P.
1001 Page Mill Road
Building One, Suite 200
Palo Alto, CA 94304
(650) 739-7500

Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
Ethan H. Townsend (#5813)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
rsmith@mnat.com
etownsend@mnat.com

Roger Fulghum
Lisa C. Kelly
Thomas Rooney
Michelle J. Eber
BAKER BOTTS L.L.P.
One Shell Plaza
910 Louisiana
Houston, TX 77002
(713) 229-1234

*Attorneys for Defendant AT&T Services, Inc.*

December 14, 2015

13

## CERTIFICATE OF SERVICE

I hereby certify that on December 14, 2015, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on December 14, 2015, upon the following in the manner indicated:

Dragon Intellectual Property, LLC                                 *VIA HAND DELIVERY*
c/o IncYourBiz Corp.
6 Polly Drummond Hill Road
Drummond Office Condominium
Newark, DE 19711

Timothy Devlin                                                     *VIA HAND DELIVERY*
DEVLIN LAW FIRM LLC                                                   *(without exhibits)*
1306 N. Broom Street, 1st Flr.
Wilmington, DE 19806

Richard D. Kirk, Esquire                                          *VIA HAND DELIVERY*
Stephen B. Brauerman, Esquire
Vanessa R. Tiradentes, Esquire
Sara E. Bussiere, Esquire
BAYARD, P.A.
222 Delaware Avenue, Suite 900
Wilmington, DE  19801
*Attorneys for Plaintiff*

Robert E. Freitas, Esquire                                               *VIA FEDEX*
Jason S. Angell, Esquire
QuynhChi Nguyen, Esquire
Jessica N. Leal, Esquire
FREITAS ANGELL & WEINBERG LLP
350 Marine Parkway, Suite 200
Redwood Shores, CA 94065
*Attorneys for Plaintiff*

*/s/ Ethan H. Townsend*

_____

Ethan H. Townsend (#5813)

1